[No. 964.    Decided January 26, 1894.]

FREDERICK MEYER AND FREDERICK NACHTSHEIM, *Respondents*, v. THE TACOMA LIGHT AND WATER COMPANY, *Appellant*.

WATERCOURSES — DIVERSION — UNDERGROUND STREAM.

A riparian owner is not entitled to damages for the diversion of the waters of a stream tributary to a lake at whose outlet he was operating a mill, when the evidence shows that in the wet season there was abundance of water in the lake and stream, but in the summer season the stream ceased to flow into the lake over the surface of the ground, and there is nothing in the proofs tending to show that the water percolating below the surface was confined to a space immediately below or near the actual bed of the stream, although the proofs may show that the whole valley or watershed of the stream had an underlying impervious stratum; that such

stratum was covered by a deposit of gravel of varying depth, and that the trend of this impervious stratum from each side of the stream was, in general, toward the bed thereof.

*Appeal from Superior Court, Pierce County.*

·*Stevens, Seymour & Sharpstein*, for appellant:

Percolating water is a process of nature not apparent, and has, therefore, not received the protection which running water in a natural channel has always received. *Chase v. Silverstone*, 62 Me. 175; *Roath v. Driscoll*, 20 Conn. 532; *Ocean Grove Camp Meeting Ass'n v. Com'rs of Asbury Park*, 40 N. J. Eq. 447; *Taylor v. Fickas*, 64 Ind. 167; Gould on Waters, §§ 280, 282, 283; *Goodale v. Tuttle*, 29 N. Y. 459; *Pixley v. Clark*, 35 N. Y. 520; *Delhi v. Youmans*, 45 N. Y. 362; *Halderman v. Bruckhart*, 45 Pa. St. 514; *Taylor v. Welch*, 6 Or. 198; *Bassett v. Salisbury Co.*, 43 N. H. 569; *Mosier v. Caldwell*, 7 Nev. 363; *Bloodgood v. Ayers*, 108 N. Y. 400; *Phelps v. Noulen*, 72 N. Y. 46; Angell on Watercourses, § 114; *West v. Taylor*, 16 Or. 165; *Eulrich v. Richter*, 37 Wis. 226; *Chatfield v. Wilson*, 28 Vt. 54; *Lybes' Appeal*, 106 Pa. St. 626.

*J. P. Cass*, and *W. W. Likens*, for respondents:

Even if the current of the creek is under ground at certain seasons of the year, yet the same rules apply to such current as if it flowed on the surface.   Gould on Waters, § 281; *Hale v. McLea*, 53 Cal. 578; *Smith v. Adams*, 6 Paige Ch. 435; *Mahan v. Brown*, 13 Wend. 261; *Swett v. Cutts*, 50 N. H. 439; *Cole Silver Mining Co. v. Virginia Water Co.*, 1 Sawy. 470; *Strait v. Brown*, 16 Nev. 317.

The opinion of the court was delivered by

HOYT, J. — The questions presented by this record have been elaborately briefed and ably argued by counsel for the respective parties.   Such argument has extended over

a broad field, and raised questions the decision of which will have an important bearing upon the history of the state. The conclusion to which we have come as to the facts in the case will, however, make it unnecessary for us to say anything as to many of the questions suggested by the briefs.

The plaintiffs' action was founded upon the alleged fact that the diversion of water by the defendant from Clover creek and its tributaries had resulted in the lowering of Steilacoom lake so that the mill of the plaintiffs situated upon an outlet of said lake was, during the dry season, deprived of water necessary to its proper operation. Upon this question plaintiffs' own proof showed that there was no water flowing into said lake from said Clover creek upon the surface during the dry season. The undisputed proof further showed that during the wet season, when the waters of Clover creek did flow upon the surface into said lake, there was water more than sufficient to supply plaintiffs' needs. It appeared that during that part of the year there was more water flowing through the outlet upon which plaintiffs' mill was located than could well be controlled. It further appeared from the proofs that the waters flowing into the lake in the wet season did not so accumulate as to materially increase the flow in said outlet during the dry season of the year. To state it differently, it appeared from plaintiffs' own proof that at the time of year when it would be of any benefit to them there was no flow of the waters of Clover creek into said lake upon the surface of the ground, and that for that reason they were in no way damaged by the diversion of the water by defendant, unless they were entitled to have its flow into said lake under the surface of the ground protected the same as a flow upon the surface.

Such being the state of the proofs, it follows that, unless under the circumstances connected with such underground

flow plaintiffs were entitled to such protection, they have shown that they have no cause of action against the defendant. Plaintiffs, in their brief, have seen the importance of this question, and have entered into an elaborate argument in relation thereto in which numerous authorities tending to establish the fact that such flow should be protected have been cited. The authorities so cited by the plaintiffs, as well as those cited by the defendant, establish the doctrine that a flow underground will be protected the same as one upon the surface, if it constitutes a stream with defined course and boundaries.

That which has given rise to difficulty and much diversity among the authorities is as to the application of the rule. Some of the courts have held that the flow can only be protected when in a solid body like a stream on the surface, while others have applied the rule with greater liberality, and have afforded protection to the lower riparian proprietor when the underground stream was not so well defined. But so far as we have been able to discover, none of the cases have gone so far as to hold that he would be thus protected as to water which was percolating through sand or gravel within limits not at all defined by anything appearing upon the surface or made to appear by investigation beneath the surface. Counsel for plaintiffs insist that the proofs were sufficient to authorize a finding that the water in question was so flowing as to be entitled to protection.

The proof in regard thereto established this state of facts: That the whole valley or watershed of the stream had an underlying impervious stratum; that such stratum was covered by a deposit of gravel of varying depth; that the trend of this impervious stratum from each side of the stream was in general towards the bed thereof. Upon these facts plaintiffs contend that this whole watershed should be considered as the bed of the stream, and that

since the water which, higher up the stream, was flow-
ing upon the surface could not get below this impervious
stratum, it must, when under the surface, continue to form
a stream within defined limits.    There is nothing in the
proofs in any manner tending to show that the water was
confined to a space immediately below or near the actual
bed of the stream upon the surface of the ground, hence
the contention of plaintiffs can only be sustained by hold-
ing that the entire valley through which it flowed consti-
tuted the bed of the stream.    No case has been cited that
would justify such a ruling.

It has never been held that a flow of water percolating
through the sand and gravel of the hillsides which lead
down to the bed of the stream will be protected on account
of the fact that such waters are confined to the valley to
which such hillsides descend, and of which they form a
part, by some underlying stratum below which the waters
cannot go.    If it had been shown by the proofs that the
water all remained upon the surface until it arrived at a
defined point, and then all disappeared, the conclusion
might follow that it still retained its position as a stream
confined to a point substantially identical with the bed
upon the surface.    But no such fact was in any manner
made to appear.    There was nothing to warrant any other
conclusion than that the water spread itself through the
gravel under and on each side of the stream, with no other
boundaries than the underlying stratum of which we
have spoken.    There is nothing to at all indicate where
or how within such boundaries the flow is continued.    It
may have appeared by inference that the waters, or a por-
tion of them, eventually reached the lake, but there was
nothing to show that they so reached the lake in any other
manner than by percolation through the entire gravel bed
of the valley of the stream.

These are the conclusions to which we have been forced

by the proofs, and applying thereto the doctrine of the cases referred to, it must be held that plaintiffs are not entitled to be protected in having such waters flow in an undiminished amount into the lake.   And as these facts appeared at the time plaintiffs rested their case, defendant's motion for a non-suit should have been granted. The judgment must be reversed, and the cause remanded with instructions to dismiss the action.

DUNBAR, C. J., and SCOTT, STILES and ANDERS, JJ., concur.