[No. 8188.  Department One.  March 28, 1910.]

DEMENT BROTHERS COMPANY, *Respondent*, v. THE CITY OF WALLA WALLA, *Appellant*.[1]

WATERS AND WATER COURSES—DIVERSION—DAMAGES—EVIDENCE—SUFFICIENCY. In an action against a city for the wrongful diversion of the waters of a creek, the fact that riparian owners were also diverting the water is no defense, where they were using only the amount to which they were entitled and no material damage would have resulted to plaintiff but for the substantial diversion made by the city.

SAME—MEASURE OF DAMAGE. The measure of damages for diverting water from a mill power, where electrical machinery was installed to operate the mill, is the cost of operating the same.

SAME—DIVERSION—DAMAGES—EVIDENCE—SUFFICIENCY. An owner of a mill may recover damages for the diversion of the waters of a stream used for power purposes, although the mill formerly shut down during the dry season because of insufficient water to run the mill, where it appears that while there was a general shortage through the winter months, even during the dry season there had been power enough to elevate and clean grain and run a feed mill.

SAME — DIVERSION — STREAMS — CHANNELS. Where springs, the principal source of a city supply, are fed by waters diverted by the city from a stream, so that the diverted waters can be traced as a part of the surface flow, a lower proprietor on the stream may recover his damages caused by the diversion.

Appeal from a judgment of the superior court for Walla Walla county, Miller, J., entered February 16, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to enjoin the

[1]Reported in 107 Pac. 1038.

diversion of the waters of a stream, and for damages. Affirmed.

*Sharpstein & Sharpstein*, for appellant.
*T. P. & C. C. Gose*, for respondent.

CHADWICK, J.—Mill creek is a nonnavigable, perennial stream, running through the city of Walla Walla. Since the first settlement of the country its waters have been used for irrigation and power purposes. For more than thirty years respondent or its immediate predecessors in interest have operated a flouring mill with power generated from the waters of the creek. In 1896 the Walla Walla Water Power Company, a private corporation, by means of infiltration wells, subterranean pipes and chambers, developed and diverted a part of the waters of Mill creek for the use of the citizens of Walla Walla. In 1899 the city acquired all the rights, interests, and property of the water company, and through the same devices and by other developments, an increased flow of the waters met the needs of a rapidly growing urban population. Plaintiff began this action to recover damages resulting to it on account of a shortage of water, alleged to have been caused by the unwarranted acts of the city during the years 1904 and 1905, and to enjoin the city from further invasion of its rights. The case was allowed to drag itself along so that, before it was ended, plaintiff obtained leave, and was permitted, to file a supplemental complaint setting up like damages for the years 1906 and 1907. The trial judge made findings and decree affirming the right of respondent to use, unimpaired by any act of the city, the natural flow of the waters of Mill creek for power purposes, and awarded damages in the sum of $5,000 for the years 1904 and 1905, and the sum of $1,935.65 for the years 1906 and 1907.

The testimony is voluminous, and while in some few instances may be said to be conflicting, there is abundant evidence to sustain the decree of the court awarding to the

respondent a right to the use of the waters of Mill creek without impairment or diminution on the part of the city. It is true that the city has undertaken to prove that the principal source of its supply is what is known as Lennon springs, lying near the north bank of Mill creek, which it claims is an independent flow; but there is ample evidence to show that Lennon springs, in so far as the waters flow in any material quantity, are fed by waters taken from what is known as Isaacs mill race, a lateral of Mill creek, which is now owned by the city and has been used for power purposes, and, were such waters allowed to flow uninterruptedly, would reach the head of respondent's race and be available to it for power purposes. So that the only question for us to determine is, whether the testimony sustains the award of damages.

It is first contended that the judgment for damages cannot be allowed to stand, for the reason that many owners riparian to Mill creek have been, and are now, diverting and using water, and that they are equally liable for the damage, if any was sustained. The trial court found that certain of these riparian owners were only using the amount of water to which they were entitled. The testimony shows that others were wrongful users, and that respondent from time to time patrolled the creek and dammed up the heads of their ditches. It is further shown that the substantial diversion was that made by the city at the so-called Lennon springs, and that, but for this, no material damage would have resulted. We believe the findings of the lower court in this regard are correct, and should be sustained.

It is next urged that, in any event, the city is liable for only nominal damages, for the reason that the only shortage proven is that occurring in the summer months, and that the proof shows that respondent's mill had not been accustomed to run during that season of the year for the want of power; in other words, that an award of damages would result in the payment to the respondent for something that it did not

possess and, hence, could not be deprived of.   The testimony upon this feature of the case shows that there was a general shortage running through the winter months, and while there was an average season of about six weeks in the summer when the mill was accustomed to shut down, that nevertheless the water had been used to elevate and clean grain and to run the barley and feed mill during that season.   In 1905 respondent put in a supplemental electric power and, for the years 1906 and 1907, the cou.t fixed the damages by allowing the amounts expended by resp ident for electric power when there was insufficient water · ) operate the mill at its capacity.   This method furnished a· exact standard of measurement and, although the amount allowed for the two previous years may seem to be arbitrarily fixed, we think the court might with propriety have fixed a greater sum.

Appellant relies upon the case of *Meyer v. Tacoma Light & Water Co.*, 8 Wash. 144, 35 Pac. 601, saying that to sustain this judgment we must overrule that case.   On the contrary, as we read the case, it is not inconsistent with our present conclusion.   It was there held:

"There is nothing in the proofs in any manner tending to show that the water was confined to a space immediately below or near the actual bed of the stream upon the surface of the ground, hence the contention of plaintiffs can only be sustained by holding that the entire valley through which it flowed constituted the bed of the stream.  . . .   There was nothing to warrant any other conclusion than that the water spread itself through the gravel under and on each side of the stream, with no other boundaries than the underlying stratum of which we have spoken.   There is nothing to at all indicate where or how within such boundaries the flow is continued.   It may have appeared by inference that the waters, or a portion of them, eventually reached the lake, but there was nothing to show that they so reached the lake in any other manner than by percolation through the entire gravel bed of the valley of the stream."

There is no reason for speculation in this case.   The waters of Lennon springs, the principal source of supply, were di-

rectly fed by water taken from the Isaacs race, without which appellant's system would have been entirely inadequate to supply the needs of the city. If water can be traced as a part of the surface flow, the rights of the lower proprietor will remain attached, although the water for a time disappears in the channel, or sinks and arises out of it, if it can be traced back to the general course. It is only where the identity of flow is lost that the rule of the *Meyer* case applies.

The judgment is affirmed, with leave granted to the city of Walla Walla to begin condemnation proceedings within ninety days after the remittitur goes down.

RUDKIN, C. J., FULLERTON, and GOSE, JJ., concur.